**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| JENNY WRIGHT, NATALIE SOUD, and JAMES COBB on behalf of themselves and all others similarly situated | Civil Action No. |
| Plaintiff, | |
| vs. | |
| INTERNATIONAL FLAVORS & FRAGRANCES INC. and IFF CHEMICAL HOLDINGS, INC., | |
| Defendants. _____/ | **CLASS ACTION COMPLAINT** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiffs, JENNY WRIGHT, NATALIE SOUD, and JAMES COBB, by and through the undersigned counsel, on behalf of themselves and all others similarly situated, and for cause of action against the Defendants, respectfully allege and state as follows:

### INTRODUCTION

1. Plaintiffs bring this class action against Defendants INTERNATIONAL FLAVORS & FRAGRANCES INC. and IFF CHEMICAL HOLDINGS, INC. (hereinafter, "IFF" or "Defendants"). Defendants own and operate the chemical fragrance and flavor manufacturing plant located at 2051 Lane Ave N., City of Jacksonville, County of Duval, State of Florida (hereinafter, the "Facility").

2. Through their operation and maintenance of the Facility, Defendants released, and continue to release, substantial and unreasonable noxious odors, which have invaded, and continue to invade, Plaintiffs' property causing damages through nuisance and negligence.

## PARTIES

1. At all times relevant hereto, Plaintiff Jenny Wright is an adult resident who resides at 2893 Forbes St., City of Jacksonville, County of Duval, State of Florida and brings this action to recover all damages permitted by law.

2. At all times relevant hereto, Plaintiff Natalie Soud is an adult resident who resides at 1373 Murray Dr., City of Jacksonville, County of Duval, State of Florida and brings this action to recover all damages permitted by law.

3. At all times relevant hereto, Plaintiff James Cobb is an adult resident who resides at 1373 Murray Dr., City of Jacksonville, County of Duval, State of Florida and brings this action to recover all damages permitted by law.

4. Defendants and their agents, have at all time relevant hereto, constructed, owned, operated, and maintained the Facility located at 2051 Lane Ave N., City of Jacksonville, County of Duval, State of Florida.

5. Defendant International Flavors & Fragrances Inc. is a New York Corporation with its principal place of business located at 521 W 5th St., City of New York, County of New York, State of New York. Defendant International Flavors & Fragrances Inc. may be served with process through its registered agent, Corporation Service Company, at 1201 Hays Street, Tallahassee, Florida, 32301-2525.

6. Defendant IFF Chemical Holdings, Inc. is a Delaware Corporation with its principal place of business located at 2051 Lane Ave N., City of Jacksonville, County of Duval, State of

Florida. Defendant IFF Chemical Holdings, Inc. may be served with process through its registered agent, Corporation Service Company, at 1201 Hays Street, Tallahassee, Florida, 32301-2525.

## JURISDICTION AND VENUE

7. This cause of action seeks recovery for injuries to Plaintiffs' real property resulting from Defendants' wrongful and tortious actions and omissions, which occurred at and around the Facility in Duval County, Florida, and caused damages to Plaintiffs in Duval County.

8. Defendants engaged in discrete wrongful and tortious actions and omissions that occurred within the last four years.

9. This cause of action is brought within the applicable four-year statute of limitations. *See* Fla. Stat. Ann. § 95.11.

10. This Court has Class Action Fairness Act (CAFA) jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(a). CAFA Jurisdiction is appropriate because the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

11. Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1).

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District and because much of the property that is the subject of this action is situated in this District.

## FACTUAL ALLEGATIONS

### *International Flavors & Fragrances, Inc.*

13. International Flavors & Fragrances, Inc. is a New York Corporation that engages in the manufacture and supply of flavors and fragrances used in the food, beverage, personal care,

3

and household products.[1]

14. IFF Chemical Holdings, Inc. is a Delaware Corporation that operates as a holding company for industrial fragrances and flavors. The Company provides oversight on sales, governments regulations, financing, manufacturing, and other related duties.[2]

15. Defendants' business operates in three "segments": "Taste," "Frutarom," and "Scent."[3]

16. Defendants' "Taste" operations involve flavor compounds which are sold to the food and beverage industries for use in consumer products, such as prepared foods, beverages, dairy, and sweet products.[4]

17. Defendants' "Frutarom" segment creates and manufactures a naturals-focused suite of flavor compounds, functional foods and specialty fine ingredients.[5]

18. Defendants' "Scent" segment includes the manufacture fragrance ingredients for use in "everything from fine perfumes to beauty, detergent and household goods."[6]

19. Defendants operate 104 manufacturing facilities and 82 application laboratories throughout 44 countries across the globe.[7]

### IFF's Operations in Jacksonville

20. Defendants' business operations at the Facility involve a crude sulfate turpentine refining operation.[8]

---

[1] https://www.forbes.com/companies/international-flavors-fragrances/?sh=1b88c493239a
[2] https://www.bloomberg.com/profile/company/0282089D:US
[3] https://www.reuters.com/companies/IFF
[4] https://www.reuters.com/companies/IFF
[5] https://www.reuters.com/companies/IFF
[6] https://www.iff.com/en/scent
[7] https://www.worldbenchmarkingalliance.org/publication/food-agriculture/profile/international-flavors-fragrances-iff/
[8] https://www.metrojacksonville.com/article/2015-oct-5-reasons-for-jacksonvilles-smell/page/2

21. The Facility's refining process involves distilling crude sulfate turpentine into intermediate terpene fractions and aroma chemical precursors.[9]

22. The distilling process involves the removal of foul-smelling sulfur compounds from crude sulfate turpentine.[10] The operations require a kraft wood pulping process which separates cellulose fibers which are used to manufacture paper. The process typically involves the extraction of terpen hydrocarbons vapors from turpentine water through the use of evaporators and digesters.[11]

23. The end result provides a raw material which can be used for the production of products such as flavors and fragrances.[12]

*24.* Sulfate turpentine is characterized by a vile, sickening odor, which it is believed is due to the formation of various mercaptans during the delignification of wood.

### *IFF's Effects on the Surrounding Community*

25. Defendants exercise exclusive management, control, and operation of the Facility, which produces and emits substantial noxious odors that physically invade Plaintiffs' property.

26. The Facility is located on a large plot surrounded by residential properties in Duval County.

27. Defendants' Facility produces highly odiferous emissions which are regularly dispersed across the surrounding neighborhood.

28. Because of the noxious odors it emits into surrounding neighborhoods, the odor emitted by the Facility is regularly referred to "as a sickly sweet, turpentine smell" that typically

---

[9] https://www.metrojacksonville.com/article/2015-oct-5-reasons-for-jacksonvilles-smell/page/2
[10] https://www.pinechemicals.org/page/turptestmethods
[11] http://www.digitaljournal.com/pr/4305956
[12] https://www.pinechemicals.org/page/turptestmethods

lasts for three hours at a time.[13]

29. A properly constructed, operated, maintained, and managed Facility will collect, capture, and destroy noxious odors from the facility in order to prevent it from escaping into the ambient air as fugitive emissions.

30. Defendants have failed to adequately collect, capture, and destroy noxious odors generated at the Facility to prevent fugitive emissions and to otherwise prevent noxious odors and/or gases from the Facility from invading the homes and property of Plaintiffs and the Class.

31. Defendants have failed to sufficiently collect, capture, and destroy odors generated at the Facility to prevent them from escaping the facility into the surrounding residential neighborhoods.

32. Plaintiffs' property has been and continues to be physically invaded by noxious odors which originated from the Facility.

33. Objectionable odors and emissions from the Facility have been the subject of frequent complaints from residents in the nearby residential area.

34. Local media reports have documented that the odors from the Facility interfere with public and private activities, in both public and private spaces, in the areas surrounding the Facility including jogging, biking, sports, hiking, taking children to the park, maintaining residential property, landscaping, and grilling.

35. Plaintiff Jenny Wright, who owns a residence in Jacksonville, Florida, reported that her household suffers from chemical because of Defendants' Facility. According to Ms. Wright the odors from IFF make it impossible for her and her neighbors to enjoy their yards because the

---

[13] https://www.news4jax.com/news/local/2020/10/02/city-working-to-sniff-out-source-of-sickly-sweet-stench-in-murray-hill/

6

smell is so strong it causes physical reactions. Sometimes, it is so intense that it permeates into her home even with all doors and windows closed. Ms. Wright describes the odor as a sharp, chemical odor.

36. Defendants' well documented pattern of failing to control its emissions is further demonstrated by the following:

    a. Between 2018 and July 31, 2019, the City of Jacksonville Environmental Quality Division ("EDQ") received more over 100 odor complaints because of the Facility. A small sample of these complaints include:

        i. On January 8, 2018, a complainant reported he often smells odors emanating from IFF while he gardens four miles away. The complainant reported an "[o]ld typical IFF smell(sulfur) which is like the old paper mill plant smell, and he smells it when the wind blows. Sometimes the company tries to mask the smell which don't help it. He believes it is hazardous compounds that's being released into the air."

        ii. On March 16, 2018, a complainant reported "a chemical type smell coming from the plant named IFF. Sometimes odor derives in early morning."

        iii. On March 22, 2018, a complainant reported toxic fumes being put in the air. Woke her up at 2:45 am. Company is IFF. Chemical smell(hazardous).

        iv. On May 7, 2018, a complainant reported noxious odors emanating from Defendants' Facility as "she was going down I10 across lane avenue." She further reported that it smelled of "turpentine/sulfate."

        v. On January 29, 2019, a complainant reported "a strong smell of turpentine and sulfate. It is coming from IFF. It is smelling now."

        vi. On July 24, 2019, a complainant reported, "The IFF fumes are really bad today. One business should not be allowed to force a whole community indoors."

    b. On October 2, 2020, officials from Jacksonville's EQD hosted a virtual town hall to address the "toxic smelling" odors emanating from Defendants' Facility. The officials encouraged neighboring residents to file a complaint each and every time they smell an odor emanating from Defendants' Facility.

  c. In November 2020, during a Murray Hill Preservation Association meeting, City Councilwoman Randy DeFoor stated she believes IFF is deliberately releasing the odor causing chemicals when the EQD is not available. She reported, "[t]hey do it early in the morning and they do it late at night, knowing that you guys [EQD] aren't available. And you have to respond within four hours, which obviously you can't, and then when they do it, by the time you get there it's all gone," she said, echoing the concerns of her constituents. "They [IFF] know it. There's no doubt in my mind."

  d. On December 11, 2020, the City of Jacksonville Environmental Quality Division issued Defendant a Cease and Desist Citation for Defendants' violations of FS Chapter 403, Florida Statutes (FS), JOC Chapter 376, Jacksonville Environmental Protection Board (JEPB) Rule 1, and DEP Permit No. 0310071-022-AV. The Cease and Desist Citation detailed that the EQD "received three (3) citizen complaints on October 2, 2020, two (2) citizen complaints on October 16, 2020, and one (1) citizen complaint on December 2, 2020 regarding objectionable odors emitted from" Defendants' Facility. The allegations of complaints from 6 separate households were investigated by the EQD, where the EQD staff detected objectionable odors and verified that Defendants' Facility was the source of the odor.

  e. There are numerous media reports documenting Defendants' "toxic" and "chemical" odors and emissions.

37. Defendants are required to control their odorous emissions by, among other things, following proper chemical facility practices, and installing, operating, and maintaining an adequate gas collection system to capture and destroy facility gas.

38. Defendants have failed to adequately control their odorous emissions in a manner that would prevent them from escaping the Facility's property boundary and impacting neighboring residential communities.

### *Plaintiffs' Damages*

39. The foul odors emitted from Defendants' Facility are offensive to Plaintiffs and the Class, are offensive to reasonable people of ordinary health and sensibilities, and have caused property damage, including by substantially interfering with the ability of Plaintiffs and the Class

to freely use and enjoy their homes and property.

40. The odors have dispersed across all public and private land within the Class Area.

41. The invasion of Plaintiffs' property and that of the Class by noxious odors has unreasonably interfered with the use and enjoyment of their property and, in addition, reduced the value of that property.

42. Members the public, including but not limited to businesses, employees, commuters, tourists, visitors, customers, clients, students, and patients, have experienced and been harmed by the fugitive noxious odors emitted from the Facility into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside of the Class Definition have not suffered damages in the form of diminished property values and/or loss of use and enjoyment of their private property.

43. Defendants are aware, and have known, about the substantial, noxious fugitive odor emissions that the Facility created for neighboring residents through numerous complaints, administrative actions, significant media attention, and forums held by public bodies throughout Duval County; yet Defendants have refused and/or failed to fix or mitigate the problem.

44. Defendants took negligent, knowing, intentional, and reckless actions and omissions, through the construction, operation, and maintenance of the Facility, which caused the invasion of Plaintiffs' property by noxious odors on frequent, intermittent, and reoccurring occasions too numerous to list individually.

## CLASS ALLEGATIONS

Plaintiffs incorporate by reference as if fully set forth herein each and every allegation in the Complaint.

**A.    Definition of the Class**

39. Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Fed. R. Civ. P. 23. Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within the area enclosed by a geographic boundary consisting of:**
>
> **Bounded by the facility's property line to the north, I-295 to the east, the railroad tracks to the west; and extending five miles south beyond the facility's southern property line.**

A map of the proposed class area is depicted below.



The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

40. This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

    a. The class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

10

    b.    There are substantial questions of law and fact common to the class including those set forth in greater particularity herein;

    c.    The claims of the representative parties are typical of the claims of the class;

    d.    Questions of law and fact such as those enumerated herein, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

    e.    A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    f.    The relief sought in this class action will effectively and efficiently provide relief to all members of the class;

    g.    There are no unusual difficulties foreseen in the management of this class action; and

    h.    Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

### B. Numerosity

41. The Class consists of thousands of members and therefore is so numerous that joinder is impracticable.

### C. Commonality

42. Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

    a.    whether and how Defendants wrongfully, negligently, knowingly, intentionally, recklessly, and grossly failed to construct, maintain and operate the Facility, causing noxious odors to invade Plaintiffs' property;

    b.    whether Defendants owed any duties to Plaintiffs;

    c.    which duties Defendants owed to Plaintiffs;

    d.    which steps Defendants have and have not taken in order to control the emission of noxious odors through the maintenance and operation of the Facility;

  e. whether and to what extent the Facility's noxious odors were dispersed over the class area;

  f. whether it was reasonably foreseeable that Defendants' failure to properly construct, maintain and operate the Facility would result in an invasion of Plaintiffs' property interests;

  g. whether the degree of harm suffered by Plaintiffs and the class constitutes a substantial annoyance or interference with their use and enjoyment of their property; and

  h. the proper measure of damages incurred by Plaintiffs and the Class.

### D. Typicality

43. Plaintiffs have the same interests in this matter as all other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

44. The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendants to properly construct, maintain, and operate the Facility.

45. All Class Members have suffered injury in fact as a result of the invasion of their property by Defendants' release of noxious odors.

### E. Adequacy of Representation

46. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiffs as representatives of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

47. Plaintiffs have retained the services of counsel who are experienced in complex

12

class action litigation and, in particular, class actions involving neighborhood environmental concerns, including the emission of noxious odors. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

### F.    Class Treatment Is the Superior Method of Adjudication

48.    A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   a.    Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

   b.    Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

   c.    The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

   d.    The proposed class action is manageable.

49.    The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

50.    Notice can be provided to members of the Class by U.S. Mail and/or publication.

## LIABILITY

## CAUSE OF ACTION I

## PUBLIC AND PRIVATE NUISANCE

Plaintiffs incorporate by reference as if fully set forth herein each and every allegation in the Complaint.

51. The noxious odors, which entered Plaintiffs' private property originated from the Facility constructed, maintained, and operated by Defendants.

52. The noxious odors have been disbursed and impacted public and private property throughout the Class Area.

53. The noxious odors invading Plaintiffs' property are indecent and offensive to people with ordinary health and sensibilities and obstruct the free use of their property so as to substantially and unreasonably interfere with the comfortable use and enjoyment of life and property, including in but not limited to the following ways:

   a. Causing Plaintiffs and the Class to remain indoors and forego use of outdoor areas;

   b. Causing Plaintiffs and the Class to keep doors and windows closed when weather conditions otherwise would not so require; and

   c. Causing Plaintiffs and the Class annoyance, discomfort, inconvenience, embarrassment, and reluctance, including by being unable to invite guests to their homes and/or play outside with children.

54. Defendants owed, and continue to owe, a duty to Plaintiffs and the putative class to prevent and abate the unreasonable interference with the invasion of their private property interests.

55. Defendants owed, and continue to owe, a duty to the public to prevent and abate unreasonable fugitive emissions of noxious odors and gases into public property that interferes with the public right to be free from unreasonably polluted, contaminated, and/or noxious air.

56. By constructing and then failing to reasonably construct, operate, repair, and maintain its Facility, Defendants have wrongfully, negligently, and knowingly created a foreseeable risk of harm and caused an unreasonable invasion of Plaintiffs' property by noxious odors.

57. As a foreseeable, direct and proximate result of the foregoing conduct and omissions of Defendants, Plaintiffs suffered damages to property as alleged herein.

58. As a direct and proximate result of Defendants' intentional acts, Plaintiffs suffered harm relating to the use and enjoyment of land and property.

59. As a direct and proximate result of Defendants' intentional acts, Plaintiffs suffered diminution of property values.

60. Separate and apart from the private property damage incurred by Plaintiffs and the Class, Defendants' emissions have substantially interfered with rights common to the general public, including the right to breathe unpolluted and/or unoffensive air.

61. Plaintiffs and the Class have suffered, and continue to suffer, special harm relating to the use and enjoyment of their land and property, and decreased property values.

62. The injuries to Plaintiffs' property, and Plaintiffs' rights therein, are separate and different in kind from the harm caused by Defendants to the public at-large and/or other private individuals not within the class description.

63. Defendants' nuisance is recurring and ongoing.

64. Defendants' nuisance is abatable.

65. Neither Plaintiffs nor their proposed Class have consented to the invasion of their property by noxious odors.

66. By causing noxious odors produced and controlled by Defendants to physically invade Plaintiffs' land and property, Defendants negligently, knowingly, intentionally, and recklessly created a nuisance which substantially and unreasonably interfered with Plaintiffs' use and enjoyment of property and Plaintiffs' property values.

67. Any social utility that is provided by the Facility is clearly outweighed by the harm suffered by the Plaintiffs and the putative class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the value of their properties.

68. Defendants' substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property constitutes a public and private nuisance for which Defendants are liable to Plaintiffs and the putative class for all damages arising from such nuisance, including compensatory and injunctive relief.

## CAUSES OF ACTION II

### NEGLIGENCE

Plaintiffs incorporate by reference as if fully set forth herein each and every allegation in the Complaint.

69. Defendants owed, and continue to owe, a duty to Plaintiffs to construct, operate and maintain the Facility in a reasonable manner and to take reasonable steps to prevent and abate the fugitive emission of noxious gases and odors from the Facility.

70. Defendants breached their duties by negligently and improperly maintaining and operating the Facility such that it has caused the invasion of noxious odors into Plaintiffs' homes, land, and property on occasions too numerous to mention individually.

16

71. As a direct and proximate result of Defendants' negligence in maintaining and operating the Facility, Plaintiffs' property has been repeatedly and unreasonably invaded by noxious odors.

72. As a further direct and proximate result of the foregoing conduct of the Defendants, Plaintiffs suffered damages to property as alleged herein, including through loss of use and enjoyment of private property and diminution of property values.

73. The invasion and subsequent damages suffered by Plaintiffs were reasonably foreseeable by the Defendants.

74. By failing to properly construct, maintain and operate the Facility, Defendants failed to exercise the duty of ordinary care and diligence, which they owe to Plaintiffs and the putative class, so noxious odors would not invade their property.

75. A properly constructed, operated and maintained Facility will not emit noxious odors into neighboring residential areas.

76. By failing to construct, maintain and operate the Facility, Defendants negligently, knowingly, intentionally, and recklessly caused the invasion of Plaintiffs' property by noxious odors.

77. Defendants knowingly breached their duty to exercise ordinary care and diligence when it improperly constructed, maintained, and operated the Facility and knew, or should have known, upon reasonable inspection that such actions would cause Plaintiffs' property to be invaded by noxious odors.

78. As a direct and proximate result of the failure of Defendants to exercise ordinary care, Plaintiffs' residences were invaded by noxious odors causing and constituting damage to

property, including by interfering with use and enjoyment of property and causing diminution of value.

## **PRAYER FOR RELIEF**

Plaintiffs incorporate by reference as if fully set forth herein each and every allegation in the Complaint.

**WHEREFORE**, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

    A.    Certification of the proposed Class pursuant to Fed. R. Civ. P. 23;

    B.    Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

    C.    Judgment in favor of Plaintiffs and the Class members and against Defendants;

    D.    An award to Plaintiffs and the Class of all damages to which they may be entitled under law in an amount considered fair and reasonable by a jury, including pre-judgment and post-judgment interest thereupon;

    E.    An award to Plaintiffs and the Class of all appropriate injunctive relief not inconsistent with Defendants' state and federal regulatory obligations;

    F.    An Order holding that the invasion of the aforementioned noxious odors upon the properties of Plaintiffs and the Class constituted a nuisance;

    G.    Such further relief both general and specific to which Plaintiffs may be entitled.

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury on all issues so triable.

**DATED** this 6th day of January, 2021

Respectfully Submitted:

**MITCHELL A. STONE, P.A.**
/s/ Mitchell A. Stone
**MITCHELL A. STONE, ESQUIRE**
Florida Bar No.: 797121
1830 Atlantic Boulevard
Jacksonville, Florida 32207
904-396-3335
Email: mitch@jacksonvilledefense.com

*Steven D. Liddle
*Laura L. Sheets
*Albert J. Asciutto
LIDDLE & DUBIN, P.C.
*Pro Hac Vice Applications to be Submitted*
975 E. Jefferson Avenue
Detroit, MI 48207
Telephone: (313) 392-0015
Facsimile (313) 392-0025
sliddle@ldclassaction.com
ncoulson@ldclassaction.com
mrobb@ldclassaction.com

*Attorneys for Plaintiffs*